Under advisement, we call our last case of this morning, Sapinski v. United Parcel Service et al., number 10-1730, Ms. Pollack and Ms. Kaplan. Good morning, Your Honors. My name is Cynthia Pollack, and I represent the appellant at Sapinski. I reserve three minutes for rebuttal. This case involves the fact that it is now entering the ninth year that my client has been trying to get back to work, and UPS has refused to allow him when he's able, willing to do the jobs, and there are openings and vacant positions. The problem from UPS's point of view is that he supposedly has a restriction that he cannot lift more than 70 pounds above waist level, is that correct? He can't lift above 70 pounds above the waist. And that they combine positions, so washer and unloader, the unloader portion of that, at least now requires, I don't know what it did back then because the job description post-dates some of the problems here, now requires that you lift 70 pounds on a regular basis. No, because there is no job description for the car wash, any type of combination job. You're talking about unloader. Unloader, but if you look at the job descriptions that, again, are after the fact, the unloader, if the car wash job slash combo job was underneath that job, it would have been listed there. And when you look at the unloader job description, it doesn't list it. And if you look at the affidavits from management, they say the only additional thing with these combo jobs is one lifting, one lifting task. Out of the 50 tasks that someone does during the day, that one task certainly is marginal and not an essential function of the position. And this court, in Turner, Skirsky, and Dean, all those three cases have said that the essential function position is a jury question. It's a factual issue. It's not supposed to be decided as of law. It makes 100 percent sense because of the fact that you're usually looking at a job description. In this case, there was no job description for this position. That's on one side. And then you have, in our case, you have my client saying he could do the job. He has done the job in the past. When he first bid on the car wash unload job, didn't UPS ask him for more information about whether he could perform the job and he didn't supply that information? Incorrect, Your Honor. He has testified that he has provided all the information. And, again, it would be – What did he do in response to that request? He had provided. He went, actually, and paid a doctor and said, can I do this job? And that's what they wanted. He did that. Management said, you can come back. And then they changed their mind. And so he has testified. And what did the doctor say in response? The doctor had provided an excuse saying that he can do the job of AM sort car wash. So you would have to be deciding that you take UPS's side and actually balancing the factual disputes because Mr. Sapinski has always disputed everything that UPS says. If they say, oh, he didn't get back to us, he has said, yes, I have gotten and done anything. And it makes no sense why he wouldn't have done anything. But, really, the crucial issue for this court is whether the essential function analysis, is that a jury question? And especially in this case, there was no job description, so you don't even have to really balance. You look at what my client said. You look at two employees who actually do. One does the car wash slash clerk position. She testified there's hardly any lifting. It's lifting a hose. You mean for the unloading position, not for clerk? No, the car wash position. My perception was that there's not a problem with the car wash position. The problem is with the unloading position, the unloading portion of the combination position. And there is nowhere in the record that UPS has pointed to a statement that he was required to do something in the combo job that he couldn't meet because there is no job description. There is no affidavit that says, oh, he has to lift something, so much pounds. There's none of that. And, in fact, according to their own contract, you have help when it's over 70 pounds. So there is no requirement that he couldn't meet. And in this case, there is. Let me ask the question whether you agree that Mr. Sapinski can no longer perform the lifting requirements of the packaged car driver position. You agree. You concede that, right? He couldn't do his prior job. Without accommodations. Correct. Without accommodations, he could not do his job. And when you look at the combination, the descriptions that the employer provided, the combination job, car wash, unloader position, and the driver position, don't they all have the similar restrictions? No, and that's where the problem is. They will not be able to get up here and tell you where is the job description for the combo job. There is no job description, so they can't pull a complete – they're actually trying to pull two jobs and say that's one. That's not what their management even attested to. And my client, when he was doing the car washing job prior, he did unloading tasks because that is sometimes required of you. I'm lost here. Going back to 77, the collective bargaining agreement, you can combine jobs. And then sometime after that, certain jobs were combined. And you're saying there's not a combination job of car washer slash unloader? No. What the question was is are they allowed to combine? I guess since 1977, but where are the job descriptions that show you the combination job? They couldn't be the same two jobs or you wouldn't be able to get it done in an eight-hour day because that's two different jobs. And what they tried to do was part-time workers, they took that job and made it into a full-time job. So UPS wants you to say these two job descriptions you have to meet. Well, no, that's not the case. It's a car wash slash unload AM sort. Any way you look at it, with accommodations, Mr. Sapinski could perform that job. And in addition to not only that job, I presented evidence of clerk positions. With accommodations, he could do what job? Pardon? With accommodations, he can do what job? There is Exhibit H, which has been contested. He could do any type of clerk job. Clerks' jobs don't require any lifting. I thought you agreed or everybody agreed that he could do the job as a car washer today. Correct. The question is if you combine car washer with unloader, and if unloader requires lifting, lowering, pushing, pulling, leverage, and manipulating equipment and or packages weighing up to 70 pounds and then assist others in moving packages weighing up to 150 pounds, that UPS is saying that's what they believe he can't perform because he can't lift more than 70 pounds above waist level. Well, according to that job description, which is, again, after the fact. Two months, I think, after the fact. Yes, and to me, you have to have it. The EEOC manual says that you have to have it prior to the posting. You have to have the job description in place. So to me, you can't even look at that. That's viewing the facts against me, not for me. But even if you look at that job description, he can do that job because of the fact he can lift up to 70 up to his waist, and pursuant to their own agreement, they say that you're not allowed to lift over 70 without help or some other device. In effect, what you're saying is, look, this case shouldn't be decided at summary judgment. There's a material issue of fact that should be worked out at trial. Correct. Let me ask you this question about the accommodation. What reasonable accommodation did Sapinski actually request of UPS? To be allowed to come back to work in open, vacant positions. Is that an accommodation? I believe it's an accommodation because of the fact that he couldn't go back to the job that he held. Yes, but isn't an accommodation, you're asking for a modification to the job description? Well, I'm not even asking for that, and nor did we ask here because, again, there's no job description whatsoever on this position. That's the point. He didn't really ask. Mr. Sapinski never really asked for a reasonable accommodation. Yes, he did because of the fact he has these restrictions on him. He comes to work. They won't let him come back to work. He says, I want to come back. I can't come back at my car driver position, but I know there's other positions out there. I want those vacant positions, which were bids. He actually signed them. So there is no dispute that he asked for an accommodation. Okay. And if I could just mention the 54B, which would be the retaliation aspects. The last SIR reply brief that UPS filed said that I had waived the retaliation claim, which I have not waived. And, Judge Fisher, you have the Berkeley case, the second Berkeley case, 2006. You decided it, which states that it has to be no just reason for delay and actually be designated as a final order or it would be piecemeal, which, of course, the court doesn't want piecemeal appeals. I had the first Berkeley case. Oh. And I was very thankful that someone else had the second Berkeley case. I once had a clerk that was interviewing with me, and he was saying, so what kind of important cases have you ever done? And I said, I don't know, I made one comment about a First Amendment case dealing in Tenafly, New Jersey. And he goes, oh, he said, I sort of thought it was that 54B Berkeley case or something, which was his way of saying, you haven't done much at all. I remembered that. But I'm glad somebody got the second Berkeley case. Well, it's a very good case because it makes us all know. The second Berkeley case probably is. They both are because, you know, they both tell all of us what we need to do because if you were a plaintiff and you had to wait until the, you know, you were unsure whether this is appealable or not appealable, it would be you'd be constantly filing notices of appeal just to make sure that you didn't screw up. So I think both cases are very instructive and tell everybody what the game is, how to play the rules. Let's hear from Ms. Kaplan. We'll get you back to rebuttal. Thank you. Good afternoon. May it please the Court, my name is Kim Kaplan from Reed Smith, and I, along with my colleague, Miriam Edelstein, represent the appellees in this matter. Prior to the late spring of 2006, what job description was in place with respect to an unloader? Well, Your Honor, the job descriptions for the company have essentially not changed in the requirement of the lifting of the 70 pounds.  What was in place prior to, I guess it was June or July or so of 2006? There have been various versions of those job descriptions, and they were included in the lower record, the court record. What does it say? Because the one I have here is dated 9-11-06. Yes, and essentially for the given time frame at issue here, as far as a loader is concerned or any lifting requirement is concerned in any of the UPS positions, they all say the same as what you're reading there, the requirement to lift. And where in the record is the one that existed prior to 9-11-06 then? I couldn't find it. Well, there's reference to it in the witness testimony, and I believe it was used as exhibits in some of the other depositions. But is it in the record that we have before us on appeal? Well, the record includes references to the job descriptions, and the one that is included happens to be dated in 06. But that's just the date at the bottom right-hand corner. The essential job functions had not changed during that relevant time frame from 2002 to 2006. The one that was before that, I have one at A-500. Is there another one that existed before that at A-blank? There's only reference to it in the witness affidavits. Okay. If Your Honor, if I may. The point being that if you're going to have summary judgment, there's no issue of material fact, and they're claiming that prior to the time that he was told that he didn't qualify for this particular job, that he, in fact, did qualify. And you're saying, but it shows here on the job description that he doesn't. Don't you have to put the job description that was extant at the time that you told him he couldn't perform? Well, Your Honor, the appellant has never raised this, what she's calling after the fact. No, but the point is what we're trying to find out is should this case have gone to trial? And it would seem that one of the key things you've got to put in the record is what is, what did the job of unloader require at the time you told him he couldn't perform? Well, there are other references in the record as to what that job requires. There's the witnesses referring to what everyone understands the essential job functions to be, and they're referring to what the. . . And where's that in the record, and what do they say? Well, if we start, for example, with the business agent for the appellant, in the record there's an affidavit from him stating that he had asked the appellant to please provide medical documentation to show that he can meet the essential job functions of some position at UPS, and he's referring to the job descriptions at issue. And we don't only have that, the evidence of the job descriptions, but we also have the evidence of the witnesses themselves describing what the jobs actually entail. And we have the declarations of Romeo and Johnson and other UPS employees stating that in order to perform the loading required in the three jobs at issue, the appellant couldn't meet the lifting requirements. So there's references to that. Let's just look at the one you've got in the record at A500. Sure. Lift, lower, push, pull, leverage, and manipulate equipment and or packages weighing up to 70 pounds. It doesn't say you have to take them beyond your waist, which is what his restrictions say he can do. Yes, I understand that, Your Honor, which is why I think it's important when we looked at the factual record what the witnesses have to say about that or what the collective bargaining agreement has to say about that. We know that the 70 pounds is something that's required. I understand, but the point is do you have to lift them above your waist? I don't know the answer to that, and that would seem to have to be developed later on. What exists in the record that says that he, all people who perform the unloading position, must lift packages up to 70 pounds beyond their waist or at shoulder level or something like that? Well, if we look at Business Agent Oak's declaration, he does state that he needs additional medical documentation to show that there's some position at the company, and all these witnesses are aware of what these various positions entail. The point is just looking at this essential job function description, where is it that it says that the lifting or pulling, et cetera, of boxes or items up to 70 pounds will be above waist level? It doesn't say that, does it? Well, there's that section about lifting packages to heights above the shoulder and lower to foot level is appropriate, and it doesn't say that you don't need to lift above the waist. There's the comment that you need to manipulate equipment and or packages weighing up to 70 pounds. That would include the full range of the movement of the 70 pounds, so that in addition to the... If you have a package, then, that has to be lifted above waist level, and assuming he can't do that, what accommodation could be given to him in that case? Wouldn't it be that for those particular boxes, most of which are not that heavy, that it would not be a problem for him, and you would just set those aside and someone else could do them? Who else is doing the unloading position? Well, Your Honor, this sort of helper... I'm not saying helper, necessarily. I'm saying, how many unloaders do you have on a dock? Just one? No, but there's not as many as you'd think. For example, the Taylor facility, there's about a total of 200 employees. I mean, having observed UPS positions, what I've seen is a lot of people working very hard. Yes, that is true. And as a team. And most of those packages are heavier, so what's happening is that when there's an extra heavy package, let's say in the 150 range or over 70, and the union has negotiated for assistance in those cases, because all the rest of the loaders are fully engaged in loading packages on an individual basis. So there's assistance over 70? Over 70, yes, and that's in the collective bargaining agreement. And as far as the essential job functions at issue here and the 70-pound requirement, the union has the ability to challenge any of these essential job function summaries in Article 14, Section 1. All of these essential job functions that were described in the 70-pound lifting requirement must go through their national safety committee. But with that provision, though, in the CBA, why isn't the request to have a helper for lifting the packages over 70 a reasonable accommodation? Because the union didn't challenge it in this case, and that actually was a separate arbitration. The 70-pound requirement is what's at issue here, and there's nothing on the record that the union challenged it on behalf of the appellant or in their own right. In fact, the union could have taken the case to grieve it for a basic failure to properly accommodate under Article 3, Article 14, Section 3. But that's not binding on us. No, no, it's not. It's just illustrative, I think, as part of what this record entails. It's a complete record as to what does this job really require. And whose view, you know, the union is a watchdog as to whether these are truly the essential job functions, and the 70 pound is really required. I think a bottom line for me is why under our decisions in Turner, Dean, shouldn't this question of whether or not this essential function question be submitted to the jury? Well, Your Honor, in Turner, for example, there's different components to look at. There's the written job descriptions that we've just been discussing, but this record is replete with other examples. There's the employer's judgment, which I've described to you. There's the amount of time that a package delivery company requires this particular essential function of lifting and maneuvering packages. There's the terms of the CBA. So this case is a single- What evidence is there suggesting that it was an essential function to lift 70 pounds above the waist? I keep coming back to that. Sure, I understand. Well, there's the fact that the union itself couldn't think of what this person can do. And we also have the evidence of the appellant himself admitting in this record that he cannot perform the essential job functions of a package car driver. So regardless of what they are- We understand that. So if he can't do those- And he's trying to find something else, and it sounds like he's diligently trying to find it. And the question is, has he found it? And you're saying no, but it's based on something that the only thing we have in the record came out two months after you told him no. And then even when you look at that, we're not sure it's an essential function that you lift 70 pounds above the waist. And then when you get beyond that, we're not even sure how many times you have to do it. And then when you get beyond that, we're not sure what kind of accommodation could fit, especially when you've got teams working on unloading. And then I suppose it really comes back to Judge Fischer's question, why doesn't he just let the jury sort this out? This doesn't sound like Rule 56 to us, or to me. Well, Judge Vanaski looked at the record, and there's nothing to refute that this is the requirement of lifting the 70 pounds. This is what the witness testimony is. This is what the package car driver-the former package car driver himself, the appellant, said, look, I can't do this piece of that job anymore. And it's unrefuted that that same piece carries through with the other jobs he's bid on and suggests he can now do. But he hasn't had personal experience doing them, except for maybe 1979 being a car washer. But he doesn't know-he bid on the car wash slash loader position, and he hadn't thought out, I guess, that this loader position has that exact same requirement. That's not in dispute here. The record's very clear that this lifting requirement carries through. Do you agree that it is your burden to prove that or show that the job function requires lifting above 70 pounds? Well, it's getting through the analysis. First, there needs to be some evidence from the appellant of some sort of vacancy in any event, some sort of reasonable accommodation vacancy. No, my question goes to whether you agree that UPS has the burden to show the ability to lift up to 70 pounds above the weight is an essential function of the car wash or loader position. I believe it's UPS's burden to show that he couldn't perform those positions. He couldn't do the essential job functions, which requires the manipulation of those heavier weights. And taking all the record evidence in tandem, that's what Judge Ganaski looked at. One question I have, I read these briefs again yesterday, and they're almost talking about two different cases, your brief and Ms. Pollack's case. And you even filed a serve-reply brief. You had to get a serve-reply brief in here. You don't mention Turner. You don't mention Dean. You don't mention any of these cases in your two briefs. Well, we mentioned Conrail, and we mentioned cases. I mean, it just seems to me that two sides see this case totally differently. Yes. Yes, we do. But we also, as we mentioned in our briefs, see some confusion as far as the presentation for this court of the record. For example, to now mention for the first time that there's an after-the-fact 2006 job description, when there was never a broader brief before Judge Ganaski that there was any issue as to the validity, let's say, of the job descriptions. That's new. We have so much that was not included in the opening brief, for example. We have this retaliation confusion, if the Court's interested in that, where originally Judge Ganaski looked at three forms of retaliation and decided in 2009 in favor of – It really comes back to Judge Sanchez's question. Yes. It's your burden to show what it requires and, in effect, that he doesn't measure up to it. And in terms of what the job requires, we're sort of – there's a lot of questions, I asked at least four that relate to that particular issue, and I don't think it's in the record as to what the answers are. Well, all I can say is if the appellant's admitting he can't do – he says in his PHRC complaint, I cannot perform essential job functions of package car driver, and he admits in another questionnaire that he's filled out, I cannot perform my job anymore as a package car driver, and then the other jobs available and vacant have those exact same requirements, then they really aren't reasonable accommodations for him. No, it just seems to me that, in fact, I appeared not too long ago with one of your colleagues from your firm on a panel, a CLE, on when is the right time for summary judgment, when to and when not to file for summary judgment. And it just seems to me that, you know, the divergence of views in this case is because the record below was based all on motions, and the record here is based all on briefs. And this question isn't one that's ripe for decision under Rule 56, but it needs to go to a jury. I see your concern, Your Honor. However, Judge VanAschke did look at this case twice. He has a decision from January of 2009, and the only remaining issue was a regarded-as claim, as well as whether there was some sort of continuing retaliation or possibly pattern of practice. He looked at it again with a more complete record in his second decision from February of 2010. So there is an extensive record here, and Judge VanAschke considered what he had, and most of this record is unrefuted as far as these key points that we're discussing today about lifting requirements. It is a package delivery company whose main function is to move and physically manipulate packages. So I'd just like to thank you for... Okay. I understand. Thank you. Thank you. We'll hear from Ms. Pollack on rebuttal. Thank you. I'm just going to point you to A663, which I specifically say during oral argument on summary judgment. Ms. Pollack, only because if you look at the job description, which I would note two things. It's Defendant's Exhibit J in the previous 2006. They want to say that we weren't talking about the 2006. They filled these documents, which were dated 9-11-2006, which is after this position was posted and he bid on it. So could you really use it? No. I don't think you can. But number two, even if you say, okay, we can use it, Cindy, to me it says lift, lower, push, pull, leverage, and manipulate. So it was in the record, and I did preserve that issue for appeal. In connection with the positions, not only the car wash combo position, but if you just look at Exhibit H alone, which is only from 2004, there are 90 jobs that have been filled within that one year, and they consist of revenue recovery clerk, preloader, sorter, loader, and preloader assist clerk. So 90 jobs that were open, vacant. Mr. Sapinski, after giving 20 years to UPS, should at least get the opportunity to present this case to a jury. Do you have no questions? No. Thank you very much. Thank you to both counsel. Thank you. We'll take the matter under advisement.